**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION**

| | | |
|---|---|---|
| **LEE C. CAIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **3:04-CV-0074 (CAR)** |
| | : | |
| **WALTON COUNTY SCHOOL DISTRICT and KATHY ARNETT, Former Superintended Walton County Board of Education, in her Individual Capacity,** | : | |
| | : | |
| **Defendants.** | : | |

***ORDER ON MOTION FOR SUMMARY JUDGMENT***

Before the Court is Defendants' Motion for Summary Judgment [Doc. 29].[1] Plaintiff filed a Response [Doc. 43] to the motion, and Defendants filed a Reply [Doc. 48]. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

Plaintiff, Lee Cain, is a former Coordinator of Facilities Planning and Construction for the Walton County School District ("School District"). He brings this action against the School District and Dr. Kathy Arnett, the former Superintendent of the Walton County Board of Education, complaining that he was terminated from his employment because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Equal Protection Clause of the

[1] As a preliminary matter, the Court notes that Defendants' Motion for Summary Judgment is twenty-nine pages in length, and therefore exceeds the page limitation set forth in Local Rule 7.4. Defendants did not move to exceed the page limitation pursuant to Local Rule 7.4, meaning that the Court may disregard the additional pages. In this instance, however, the Court will consider Defendants' entire motion, but warns Defendants and their counsel to remain within the page limitation, or to seek leave of Court to exceed the page limitation, in their future filings in this Court.

Fourteenth Amendment through 42 U.S.C. § 1983, and 42 U.S.C. § 1981.

**STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled

to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex, 477 U.S. at 323.

**FINDINGS OF FACT**

The facts relied upon by the Court in arriving at its decision, taken in the light most favorable to Plaintiff, are as follows:

Plaintiff is an African-American male who began working as a Facilities Planning and Construction Coordinator for the Walton County School District in May 2000. [Doc. 31; Doc. 36 (Cain Depo.), at 43]. Plaintiff was hired as an "at will" employee; he held neither a certificate of employment nor an employment contract. [Doc. 31; Doc. 44]. As the Facilities Planning and Construction Coordinator, Plaintiff was responsible for overseeing and managing all construction projects for the School District. [Doc. 31; Doc. 44]. His duties included visiting job sites and pressuring contractors to ensure construction projects were completed on time. [Doc. 31; 44]. Plaintiff reported directly to John Robinson, the Associate Superintendent of Plant and Pupil Services for the School District. [Doc. 44]. John Robinson reported to Dr. Kathy Arnett, the Superintendent. [Doc. 31; Doc. 44]. As the Superintendent, Arnett was in a position of hierarchy over Plaintiff; however, Plaintiff denies that she had direct supervisory authority over him. [Doc. 44].

Throughout his employment with the School District, Plaintiff received favorable

performance reviews. [Doc. 39 (Robinson Depo.) Exh. 8.][2] However, beginning in September 2002, Arnett became dissatisfied with, and began questioning, Plaintiff's work performance. [Doc. 29 (Arnett Aff., Exh. A)]. Plaintiff attributes much of Arnett's dissatisfaction to her limited understanding of both the construction industry, in general, and his job, in particular. [Doc. 44]. Robinson disagreed with Arnett's assessment of Plaintiff's performance.[3] However, according to Plaintiff, Arnett ignored Robinson's opinions.

## I. <u>Plaintiff's Performance</u>

Defendants cite several particular incidents that, together, formed the basis for Arnett's dissatisfaction with Plaintiff's performance and ultimately, Plaintiff's termination. The Court will now discuss these incidents:

### A. <u>Leaving Bid Meeting</u>

On September 26, 2002, Plaintiff left a bid meeting he was responsible for conducting. [Doc. 31; Doc. 44]. Plaintiff claims that the bid meeting was winding down at the time he left. [Doc. 44]. When Arnett questioned Plaintiff about his reason for leaving, Plaintiff explained that he left the meeting to visit a job site to examine a problem with a detention pond and storm drainage system. [Doc. 29 (Arnett Affidavit, Exh. A)]. Plaintiff further explained that he could not have performed the task at a different time because he needed to examine the site during a rain event. [Doc. 29 (Arnett Affidavit, Exh. A)].

### B. <u>Failure to Request Site Survey</u>

---

[2] The reviews were conducted by Plaintiff's supervisor, John Robinson. [Doc. 39 (Robinson Depo.) Exh. 8.]

[3] The extent to which Robinson disagreed with Arnett's assessment of Plaintiff is unclear, but for the purpose of this motion, taking the facts in the light most favorable to Plaintiff, the Court will assume that Robinson disagreed with every one of Arnett's complaints.

Defendants allege that in late Fall 2002, Plaintiff failed to request a site survey for one of the projects he was overseeing. [Doc. 44 (Arnett Aff., Exh. E)]. When Arnett questioned Plaintiff about his failure to request a site survey, Plaintiff explained that the architect typically is responsible for making such a request. [Doc. 44 (Arnett Aff., Exh. E)]. However, the contract for the project provided that the School district was responsible for obtaining the site survey. [Doc. 44 (Arnett Aff., Exh. E)]. Arnett expressed concern that this failure would put the project behind schedule. [Doc. 44 (Arnett Aff., Exh. E)].

**C. Leaving Site Meeting**

On December 5, 2002, Plaintiff left a site meeting with representatives of an architectural firm. [Doc. 31; Doc. 44]. Plaintiff claims that he did so because the firm sent a staff member rather than an architect to the meeting [Doc. 31; Doc. 44]. Shortly thereafter, Plaintiff sent a memo to the School Board, Arnett, and Robinson to discuss the problems he was having with the architect. [Doc. 39 (Robinson Depo.) Exh. 3]. The architect also received a copy of Plaintiff's memo, and sent a response to Arnett. [Doc. 39 (Robinson Depo.) Exh. 1]. In the response, the architect raised a number of complaints about his dealings with Plaintiff. [Doc. 39 (Robinson Depo.) Exh. 1].

**D. Meeting with Arnett and Warning Letter**

On December 11, 2002, Arnett held a meeting with Plaintiff and Robinson to discuss her dissatisfaction with Plaintiff's work performance. [Doc. 31; Doc. 44]. Arnett followed up this meeting with a letter, which outlined specific problems with Plaintiff's past performance and her expectations of Plaintiff's future performance. [Doc. 29 (Arnett Aff., Exh. B)]. In particular, the letter stated that Plaintiff was expected to visit construction sites on a daily basis, spend less time drafting charts and memos, attend to problems with construction, and be present when a new

building opens or is in the process of opening. [Doc. 29 (Arnett Aff., Exh. B)]. The letter also accused Plaintiff of failing to negotiate the best deals with contractors, and instructed Plaintiff to negotiate more favorable deals in the future. Finally, Arnett's letter warned Plaintiff that his failure to comply with her expectations could lead to his termination. [Doc. 29 (Arnett Aff., Exh. B)].

Plaintiff immediately submitted a written response to Arnett's letter. It addressed many of the concerns Arnett raised with Plaintiff about his job performance and explained why many of these concerns were unfounded. Plaintiff also discussed Arnett's expectations and explained why many of them either were unreasonable or atypical in the construction industry. [Doc. 36 (Cain Depo.) Exh. 12]. At the end of the letter, Plaintiff stated: "I have enjoyed the working relationship that we had in the past and wonder what happened? [sic] ... I cannot help but feel that all of this stems primarily from the New Central Office project and things said by the architect that I/we have not had a chance to sit down and discuss and resolve in detail." [Doc. 36 (Cain Depo.) Exh. 12].

**E. Central Administrative Services Building Project**

Problems between Arnett and Plaintiff began to surface again in June and July 2003, during final phases of construction of the new Central Administrative Services building. Twice during this period, Arnett was notified that certain fixtures were left off of the construction plans and had not been installed in the building. [Doc. 36 (Cain Depo.) Exh. 20; Doc. 39 (Robinson Depo.) Exh. 11]. Even though Arnett learned that she, herself, had ordered one of the fixtures to be left off of the plans, she believed that Plaintiff was ultimately responsible for the oversight. In an email, Arnett stated: "If [Cain] visited the sites daily as he was directed to do, some of this would most likely be caught prior to completion of a building." [Doc. 39 (Robinson Depo.) Exh. 11].

Also in July 2003, Arnett became upset with Plaintiff for failing to make daily site visits to

the new Central Administrative Services building job site. Plaintiff does not dispute that he failed to visit the site during the week prior to the July 21, 2003 substantial completion date. [Doc. 44]. Rather, Plaintiff explains that he did not visit the site during the week prior to substantial completion because he had taken leave, with Robinson's approval, to assist his wife prior to and during the birth of their child. [Doc. 44]. Plaintiff, further claims that he visited the site on a daily basis until shortly before substantial completion. [Doc. 44].

On the day before Plaintiff was scheduled to take leave, however, he was informed that there were problems with the project. [Doc. 44]. Up until that time, Plaintiff was under the impression that construction was progressing smoothly. [Doc. 44]. Plaintiff immediately informed Robinson of the problems. [Doc. 36 (Cain Depo.) Exh. 14]. As a result of these problems, substantial completion was delayed until August 2003. [Doc. 31; Doc. 44]. Plaintiff disputes that he was responsible for the delay; he claims that the architects primarily were responsible for ensuring that construction progressed on schedule. [Doc. 44].

**F. <u>Youth Elementary School Project</u>**

Finally, in late Summer 2003, Dr. Arnett became dissatisfied with the way Plaintiff had responded to carpet mold issues at Youth Elementary School. [Docs. 31, 44]. Plaintiff initially contacted the contractor who installed the carpet to investigate the problem. [Docs. 31, 44]. Plaintiff claims that there was nothing deficient about the way the carpet mold issue was handled; he explains that it was necessary to first contact the contractor because the mold could have been caused by poor construction instead of faulty installation. [Doc. 44].

**II. <u>Plaintiff's Termination</u>**

On September 12, 2003, Arnett recommended Plaintiff's termination. [Docs. 31, 44]. Three

days later, the School District voted to terminate Plaintiff. [Docs. 31, 44]. No one was hired to replace Plaintiff. [Docs. 31, 44]. Robinson has been performing Plaintiff's duties since September 2003, even though Robinson believes the additional duties are too much for one person to handle. [Doc 39 (Robinson Depo), at 8].

## DISCUSSION

### I. Employment Discrimination Under Title VII and § 1983

Though claims of employment discrimination pursued under both Title VII and the Equal Protection Clause through § 1983 are not regarded as identical, see Bass v. Bd. of County Comm'rsm 256 F.3d 1095, 1103 (11th Cir. 2001) (citing Johnson v. Transp. Agency, Santa Clara County, Cal., 480 U.S. 616, 632, 107 S.Ct. 1442, 1452, 94 L.Ed.2d 615 (1987)), the Eleventh Circuit has held that the two share the same elements of proof and are subject to the same analytical framework. Underwood v. Perry County Comm'n, 431 F.3d 788, 793 (11th Cir. 2005); see also Thigpen v. Bibb County, Ga. Sheriff's Dep't, 223 F.3d 1231, 1239 (11th Cir. 2000). The Court will, therefore, address these claims together, except where otherwise noted.

Claims for employment discrimination brought under Title VII and § 1983 may be established either through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103 (11th Cir. 2001). In this case, Plaintiff's claims are based on circumstantial evidence. Therefore, the claims will be analyzed under the burden-shifting framework detailed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972).

Under the McDonnell Douglas framework, an employee must first demonstrate a prima facie case of discrimination. Id. at 802. If the employee establishes a prima facie case, the

burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Once the employer provides a legitimate, nondiscriminatory reason for its action, the employee's prima facie case is rebutted. Id. at 253. The employee must then show that the employer's proffered reasons for its actions were not the real reasons that motivated its conduct, but rather, the employer's proffered reasons were merely pretext for discrimination. Id.

**A. Prima Facie Case**

Plaintiff complains that Defendants terminated him because of his race. To establish a prima facie case of race discrimination under the McDonnell Douglas framework, Plaintiff must show that: (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the job, and (4) similarly situated individuals outside of the protected class were treated differently. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

For the purposes of the present motion, there is no dispute that Plaintiff can establish that first two elements of a prima facie case. He is a member of a protected class as an African-American, and he suffered an adverse employment action when he was terminated. Furthermore, Defendants have not challenged whether Plaintiff was qualified for the position he held at the time of his termination. Thus, the issue raised by the present motion is whether Plaintiff can point to sufficient evidence showing that a similarly situated, non-minority employee was treated more favorably than he.

Plaintiff points to two individuals who he claims are "similarly situated" and were treated more favorably. Plaintiff's first comparator, Regena Seymour, was the Director of Food Services for the School District until her retirement in 2004. At the time of her retirement,

Seymour had been employed by the School District since 1987. Plaintiff's second comparator, Randy Bradberry, was a Principal of Loganville High School. Both Seymour and Bradberry worked under Arnett's chain of command, and both had numerous documented performance problems; nevertheless, according to Plaintiff, neither was terminated.[4] However, unlike Plaintiff, who was an "at-will" employee, both Seymour and Bradberry held contracts for employment, which were renewable annually, and certifications from the Georgia Professional Standards Commission.

To show that an employee is similarly situated, the plaintiff must show that he is "similarly situated in all relevant respects." Knight v. S. Baptist Hosp., 330 F.3d 1313, 1316 (11th Cir. 2003). While a comparator employee need not occupy a position identical to that held by the plaintiff, see, e.g., Anderson v. WBMG-42, 253 F.3d 561, 562-63 (11th Cir. 2001) (considering newsroom photographer and executive producer "comparators" to news producer), he should at least hold a position that is comparable in nature. See, e.g., Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997) (recognizing that proper comparators to doctor serving as Chief of Health Programs at a correctional institution would be other doctors in supervisory positions at the institution, and noting that "the[r]e are only a limited number of potential 'similarly situated employees' when higher level supervisory positions for medical doctors are involved.").

In this case, Seymour and Bradberry are not similarly situated to Plaintiff because, unlike Plaintiff, who was an "at will" employee, both held employment contracts and occupied

---

[4] Plaintiff is only partially correct in asserting that Seymour was not "terminated." As discussed more thoroughly below, though Seymour was not terminated, she was made to retire by the School District.

positions that entitled them to substantive and procedural safeguards under Georgia law.[5] The contractual and statutory safeguards applicable to Seymour and Bradberry limited the reasons for which the two could be terminated, and made it difficult and costly for Defendants to terminate them. In addition, at least one of the proposed comparators, Seymour, was a "tenured" employee, meaning that she was entitled to the same statutory safeguards if Defendants refused to renew her contract.[6] In fact, when Defendants attempted to terminate Seymour in 2003 by refusing to renew her contract, Seymour sought a due process hearing, and to avoid the expense of conducting such a hearing, Defendants subsequently agreed to retain her for one final year on the condition that she retire at the end of that year.

Plaintiff points to no other employees as potential comparators. Consequently, Plaintiff cannot make out a prima facie case of race discrimination.

**B. Pretext**

However, even assuming *arguendo* that Plaintiff could make out a prima facie case of race discrimination, Plaintiff's claims still would fail as a matter of law. Once Plaintiff presents a prima facie case, the burden then shifts to Defendants to present evidence of a legitimate, non-discriminatory reason for Plaintiff's termination to rebut the inference of discrimination raised by the prima facie case. Once the Defendants do so, Plaintiff must persuade the trier of fact that

---

[5] Under Georgia law, a school board may terminate an employee under an employment contract only for certain enumerated reasons. O.C.G.A. § 20-2-940(a). Further, if a school board does choose to terminate an employee, the board must follow certain procedures, including giving written notice, perfecting service of the notice, holding a hearing, and issuing a decision. O.C.G.A. § 20-2-940(b)-(f). These protections also apply when a school board decides to demote, or not to renew an employment contract of, certain "tenured" employees. See O.C.G.A. § 20-2-942.

[6] It is unclear from the record whether Bradberry also qualified as a "tenured" employee under O.C.G.A. § 20-2-942.

the reasons proffered are merely pretext for discrimination. In this case, Defendants have presented evidence that Plaintiff's termination was based on his failure to meet Arnett's performance expectations. Therefore, Plaintiff must establish that this reason is pretext.

To show that Defendants' stated reasons are pretext, Plaintiff must offer evidence "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). This Plaintiff may do either "by persuading the court that a discriminatory reason more likely motivated the employer," or "by showing that the employer's proffered explanation is unworthy of credence." Id. at 1528.

In determining whether Defendants' proffered reasons are pretext, courts must "be careful not to allow [plaintiffs] simply to litigate whether they are, in fact, good employees. Rojas v. Fla., 285 F.3d 1339, 1342 (11th Cir. 2002). The question courts must resolve is not the whether the employer's conclusion that the employee is unsatisfactory is a correct one, but "whether it is an honest one." Id.

In this case, Plaintiff argues that Defendants' explanation is pretext for two reasons. First, Plaintiff points to Defendants' treatment of Seymour and Bradberry. Plaintiff claims that the fact that Defendants did not terminate Seymour and Bradberry despite their repeated documented incidents of poor performance undermines the credibility of Defendants' explanation that they fired Plaintiff because of his poor performance. As discussed above, however, Defendants' failure to terminate these employees is irrelevant, since the employees were protected by contract and state law, while Plaintiff was an "at will" employee. Such evidence, therefore, does not support a finding of pretext.

Second, Plaintiff points to Arnett's failure to consider both Plaintiff's explanations and

Robinson's input in determining that Plaintiff's performance was deficient. Plaintiff admits that Arnett was dissatisfied with his job performance, and that her dissatisfaction may be attributable, at least in part, to her lack of understanding of the construction industry. Plaintiff argues, however, that Arnett's failure to consult with Plaintiff or Robinson, both of whom are familiar with the construction industry, calls into question Defendants' proffered reason for terminating him.

This evidence, however, is insufficient to take Plaintiff's case to a jury. Arnett's failure to consider Robinson's input is insufficient to establish that Arnett somehow was motivated by a discriminatory intent. Arnett was entitled to consider or disregard Robinson's input. Further, Robinson himself testified repeatedly under oath that Arnett's decision was not motivated by race. The fact that Arnett failed to consider Robinson's input, therefore, is insufficient to create a triable issue of fact as to Arnett's motives or the credibility of her proffered reason for terminating Plaintiff.

Furthermore, the evidence is undermined by objective evidence coming from sources other than Defendants that show that Arnett did not rely solely on her own beliefs about how the construction industry should operate. Some of the complaints Arnett received came from people in the construction industry, such as architects.

In addition, Plaintiff's allegation that Arnett was motivated by a discriminatory intent is undermined by his own evidence. Plaintiff's evidence shows that much of Arnett's dissatisfaction stemmed from Plaintiff's handling of the Central Administrative Services building project. In fact, Plaintiff, himself, even recognized as much in his December 2002 letter to Arnett.

Such evidence, when taken in the light most favorable to Plaintiff, indicates, at most, that Arnett was dissatisfied with Plaintiff's performance because Plaintiff failed to meet her exacting standards. This evidence further shows that Dr. Arnett imposed these standards because she was unfamiliar with the construction industry and because she was under pressure to complete the Central Administrative Services building by the beginning of the 2003-04 school year. Consequently, the evidence fails to call into doubt the credibility of Defendants' proffered reason for terminating Plaintiff, or otherwise establish that Defendants were motivated by a discriminatory intent.

Because Plaintiff has failed to created a genuine issue of material fact on the question of whether Defendants' proffered reasons for terminating him were pretext, Defendants' Motion for Summary Judgment must be **GRANTED** as to Plaintiff's Title VII and § 1983 claims. Furthermore, because Plaintiff failed to establish a violation of Plaintiff's rights under the Equal Protection Clause, the Court need not consider whether Plaintiff has satisfied the additional elements of a § 1983 claim.

**II. Plaintiff's § 1981 Claim**

In addition to seeking damages under Title VII and § 1983, Plaintiff seeks relief under § 1981. This claim, however, also fails. The Eleventh Circuit has held that § 1983 "contains the sole cause of action against state actors for violations of § 1981." Butts v. County of Volusia, 222 F.3d 891, 892 (11th Cir. 2000). Therefore, Plaintiff's § 1981 claim is merged into his § 1983 claim, and Defendants are entitled to summary judgment on Plaintiff's § 1981 claim. Consequently, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's § 1981 claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. 29] is **GRANTED** as to all claims.

**SO ORDERED,** this 8th day of March, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

AEG/ssh